Docket No. 16-____

𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔠𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰 𝔣𝔬𝔯 𝔱𝔥𝔢 𝔉𝔬𝔲𝔯𝔱𝔥 𝔠𝔦𝔯𝔠𝔲𝔦𝔱

THEODORE G. HARTSOCK, JR., as Personal Representative of the
Estate of Sarah Mills Hartsock,

*Plaintiff – Respondent,*

v.

GOODYEAR DUNLOP TIRES NORTH AMERICA LTD, a foreign
corporation; and THE GOODYEAR TIRE & RUBBER COMPANY, a
foreign corporation

*Defendants – Petitioners.*

**FROM THE U.S. DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA**

**GOODYEAR DUNLOP TIRES NORTH AMERICA LTD'S AND
THE GOODYEAR TIRE & RUBBER COMPANY'S
PETITION FOR PERMISSION TO APPEAL FROM
CERTIFIED INTERLOCUTORY ORDER**

E. Duncan Getchell, Jr.
 (804) 775-4388
Michael H. Brady
 (804) 775-4327

McGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia 23219-3916

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 16- _____    Caption: Theodore J. Hartsock, Jr. v. Goodyear Dunlop Tires North America Ltd.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Goodyear Dunlop Tires North America Ltd. ("GDTNA")
(name of party/amicus)

_____

who is _____ a Petitioner _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity? ☐YES ☑NO

2.    Does party/amicus have any parent corporations? ☑YES ☐NO
      If yes, identify all parent corporations, including all generations of parent corporations:
      GDTNA is owned by SRI USA, Inc. and SRI America, Inc. Sumitomo Rubber Industries, Ltd wholly owns SRI USA, Inc., which wholly owns SRI America, Inc.

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☑YES ☐NO
      If yes, identify all such owners:
      Sumitomo Rubber Industries, Ltd is publicly held.

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐ YES ☑ NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: _____E. Duncan Getchell, Jr._____    Date: _____1/29/2016_____

Counsel for: Petitioner

## CERTIFICATE OF SERVICE
**************************

I certify that on ____1/29/2016____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Mark Charles Tanenbaum, Esq.
mark@tanenbaumlaw.com
Mia Lauren Maness, Esq.
mia@tanenbaumlaw.com
Mark C. Tanenbaum, P.A.
P.O. Box 20757
Charleston, SC 29413-0757

Donald R. Fountain Jr., Esq.
Dfountain@ClarkFountain.com
Clark, Fountain, La Vista, Prather, Keen & Likkity-Rubin, LLP
1919 North Flagler Drive
West Palm Beach, FL 33407

_____E. Duncan Getchell, Jr._____
(signature)

_____1/29/2016_____
(date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 16-_____    Caption: Theodore J. Hartsock, Jr. v. The Goodyear Tire & Rubber Company

Pursuant to FRAP 26.1 and Local Rule 26.1,

The Goodyear Tire & Rubber Company
(name of party/amicus)

_____

who is _____ a Petitioner _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity? ☑ YES ☐ NO

2. Does party/amicus have any parent corporations? ☐ YES ☑ NO
   If yes, identify all parent corporations, including all generations of parent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐ YES ☑ NO
   If yes, identify all such owners:

4.   Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?     ☐YES ☑NO
If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)     ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?     ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: _E. Duncan Getchell, Jr._          Date: _____1/29/2016_____

Counsel for: _Petitioner_

## CERTIFICATE OF SERVICE
**************************

I certify that on _____1/29/2016_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Mark Charles Tanenbaum, Esq.
 mark@tanenbaumlaw.com
Mia Lauren Maness, Esq.
 mia@tanenbaumlaw.com
Mark C. Tanenbaum, P.A.
P.O. Box 20757
Charleston, SC 29413-0757

Donald R. Fountain Jr., Esq.
 Dfountain@ClarkFountain.com
Clark, Fountain, La Vista, Prather, Keen &
Likkity-Rubin, LLP
1919 North Flagler Drive
West Palm Beach, FL 33407

_E. Duncan Getchell, Jr._                          _____1/29/2016_____
(signature)                                                      (date)

- 2 -

# TABLE OF CONTENTS

**Page(s)**

TABLE OF CITATIONS ................................................................. ii

QUESTION PRESENTED ............................................................. 1

STATEMENT OF RELIEF SOUGHT ............................................ 2

STATEMENT OF THE CASE ....................................................... 3

REASONS FOR GRANTING INTERLOCUTORY REVIEW ............................ 10

    A.    A Well-Developed Split of Authority Exists between
the Federal Courts and the Courts of South Carolina
on the Scope of Trade Secret Protections for Civil Litigants ............. 12

    B.    The District of South Carolina Erred in Denying Civil
Litigants the Trade Secret Protections of South Carolina Law,
in Contravention of Federal Rule of Evidence 501, and Well-
Established Case Authority ................................................. 16

    C.    The Certified Question Is Controlling, Is Subject to a
Substantial Ground for Difference of Opinion, and an
Immediate Appeal May Materially Advance the Ultimate
Termination of the Litigation ............................................... 19

CONCLUSION .......................................................................... 20

CERTIFICATE OF SERVICE ........................................................ 21

ORDERS FROM WHICH APPEAL IS SOUGHT ............................. Ex. 1

ORDER CERTIFYING ORDERS FOR REVIEW ............................. Ex. 2

i

# TABLE OF CITATIONS

**Page(s)**

## Cases

*Al Shimari v. CACI Int'l, Inc.,*
679 F.3d 205 (4th Cir. 2012)............................................................. 12

*Anthony v. Atl. Grp., Inc.,*
No. 8:09-cv02383, 8:09-cv-02942, 2012 WL 3597122
(D.S.C. Aug. 20, 2012)..................................................................... 13

*Auto Owners Ins. Co. v. Totaltape, Inc.,*
135 F.R.D. 199 (M.D. Fla. 1990)...................................................... 18

*Branham v. Ford Motor Co.,*
701 S.E.2d 5 (S.C. 2010).................................................................... 3

*In re The City of New York,*
607 F.3d 923 (2d Cir. 2010)................................................................ 3

*Coca-Cola Bottling Co. of Shreveport, Inc. v. Coca-Cola Co.,*
107 F.R.D. 288 (D. Del. 1985).................................................*passim*

*Coca-Cola. Laffitte v. Bridgestone Corp.,*
674 S.E.2d 154 (S.C. 2009)......................................................*passim*

*Davis v. Leal,*
43 F. Supp. 2d 1102 (E.D. Cal. 1999)............................................... 18

*Duplan Corp. v. Deering Milliken, Inc.,*
397 F. Supp. 1146 (D.S.C. 1974) ..................................................... 12

*Duplan Corp. v. Deering Milliken, Inc.,*
540 F.2d 1215 (4th Cir. 1976)........................................................... 12

*Griego v. Ford Motor Co.,*
19 F. Supp. 2d 531 (D.S.C. 1998)............................................*passim*

*Hartsock v. Goodyear Dunlop Tires N. Am. LTD,*
No. 2:13-CV-00419-PMD, 2014 WL 11022098
(D.S.C. June 16, 2014)...................................................................... 20

ii

*Herbert v. Lando,*
    441 U.S. 153 (1979) ................................................................ 17

*Katz v. Carte Blanche Corp.,*
    496 F.2d 747 (3d Cir. 1974) (en banc) ............................................. 19

*McKellips v. Kumho Tire Co.,*
    305 F.R.D. 655 (D. Kan. 2015) ..................................................... 18

*MDK, Inc. v. Mike's Train House, Inc.,*
    27 F.3d 116 (4th Cir. 1994) ........................................................ 11

*Mohawk Indus., Inc. v. Carpenter,*
    558 U.S. 100 (2009) .......................................................... 12, 19

*Moloney v. United States,*
    204 F.R.D. 16 (D. Mass. 2001) ..................................................... 18

*Mustang Innovation, LLC v. Sonoco Prods. Co.,*
    No. 4:14-cv-3756, 2015 WL 4508830 (D.S.C. July 24, 2015) ........................ 12

*In re Naranjo,*
    768 F.3d 332 (4th Cir. 2014) ....................................................... 12

*Pasadena Oil & Gas Wyoming LLC v. Montana Oil Props. Inc.,*
    320 F. App'x 675 (9th Cir. 2009) ................................................... 17

*Republican Party of Minnesota v. White,*
    536 U.S. 765 (2002) ............................................................... 17

*In re Sealed Air Corp.,*
    220 F.R.D. 452 (D.S.C. 2004) ...................................................... 12

*Sensormatic Elecs. Corp. v. Tag Co. U.S. LLC,*
    No. 4:07-mc-181, 2008 WL 217113 (D.S.C. Jan. 24, 2008) .......................... 13

*Sturdivant v. Continental Tire The Americas, LLC,*
    No. 5:14-cv-02852, 2015 WL 263015 (D.S.C. Jan. 21, 2015) ......................... 13

**Statutes**

28 U.S.C. § 1292(b) ..........................................................*passim*

28 U.S.C. § 1651 ................................................................... 3

Pub. L. No. 93-595, § 1, 88 Stat. 1926, 1933 (Jan. 2, 1975) ................................... 18

S.C. Code Ann. § 39-8-60 ............................................................ 9, 13, 17

S.C. Code Ann. § 39-8-60(B) ................................................................. 7

S.C. Code Ann. § 39-8-60(B)(1) – (4) ................................................... 14

South Carolina Trade Secrets Act ........................................................ *passim*

**Other Authorities**

Fed. R. App. P. 5 .............................................................................. 2

Fed. R. Evid. 501 ....................................................................... *passim*

Fed. R. Civ. P. 26 ............................................................................. 1

Fed. R. Civ. P. 26(c)(1)(G) ................................................................. 4

Ranee Saunders, *If I Told You Then I'd Have to Kill You: The Standard for Discovery of Trade Secrets in South Carolina*, 61 S.C. L. Rev. 717, 718 (2010) ......................................................... 14

Wright & Miller, 16 Federal Practice & Procedure § 3929 (3d ed.) ................................................................................................. 1

# QUESTION PRESENTED[1]

This request for interlocutory review raises an important legal issue for this Court's review: whether the district court erred when it applied Rule 26 and federal case law, rather than South Carolina law, in determining the burden of production and persuasion that must be borne to overcome trade secret protections owned by Goodyear Dunlop Tires North America Ltd. ("GDTNA") and The Goodyear Tire & Rubber Company ("GTRC") (collectively, "Defendants").[2] Defendants contend that, in evaluating discovery rights that attach to claims sounding in South Carolina law, federal courts sitting in diversity must apply the rules of privilege of the State of South Carolina, as construed by its highest court. *See* Fed. R. Evid. 501. To prevent unlawful disclosure of core trade secrets, amounting to a substantial deprivation of those property rights, Defendants petition this Court for interlocutory review of this error.

Defendants proved,[3] Plaintiff conceded,[4] the district court found in the Disclosure Order,[5] and numerous court decisions confirm,[6] that the chemical

---

[1] The facts necessary to understand the question presented are contained in the question presented and in the statement of the case.

[2] This Court may and should "consider any question reasonably bound up with the certified order, whether it is antecedent to, broader or narrower than, or different from the question specified by the district court. Jurisdiction extends to the order, not the question alone." WRIGHT & MILLER, 16 FEDERAL PRACTICE & PROCEDURE § 3929 (3d ed.) (collecting cases).

[3] (Dkt. Nos. 107-3, 107-4, 130-7.)

[4] (Dkts. No. 109 at 10; Dkt. No. 128 at 9.)

1

composition of the inner liner of a tire[7] is a highly sensitive trade secret. It was also uncontested, in fact unanswered by Plaintiffs and unaddressed by the court below, that GTRC's Global Design Manual[8] constitutes a highly confidential trade secret. Yet the district court ordered production of the trade secrets at issue. *See* (Dkt. Nos. 137, 143, 175) (the "Disclosure Order").

On reconsideration of the Disclosure Order, the district court revisited its direction to disclose these trade secrets to Plaintiff's expert (who has a long history of failing to honor intellectual property rights and confidentiality agreements, *see* (Dkt. No. 137 at 7–10; Dkt. No. 130 at 2–4; Dkt. Nos. 130-1, 130-3, 130-4, 130-6)), to the extent of certifying the Disclosure Order for this Court's review. The district court *sua sponte* stayed the Disclosure Order pending decision on this petition and pending any appeal that may be granted. (Dkt. No. 175 at 1–2.)

## STATEMENT OF THE RELIEF SOUGHT

Defendants seek discretionary review pursuant to 28 U.S.C. § 1292(b) and Fed. R. App. P. 5 to avoid having to take a contempt with the attendant risk of a default. In the alternative, and to the extent necessary to afford relief, Defendants

---

5 (Dkt. No. 137 at 6, 9; Dkt. No. 141 at 2)
[6] (Dkt. No. 130 at 1–2 (collecting cases).)
[7] The portion of the composition formula in question here is the percentage of halobutyl, or simply butyl, a highly impermeable rubber, contained in the manufacturing formula for the G670RV295/80R22.5 inner liner manufactured by GDTNA (the "Butyl Content").
[8] *See* (Dkt. No. 130-7 at 2–3, ¶ 6) (Decl. of K. Legge).

2

petition the Court to treat this petition as one for a writ of mandamus under 28

U.S.C. § 1651. *See, e.g., In re The City of New York*, 607 F.3d 923 (2d Cir. 2010)

(granting a writ of mandamus to protect a claim of privilege).

## STATEMENT OF THE CASE

The underlying case on the merits is a products liability action asserting that

an alleged defect in a tire designed by GTRC and manufactured by GDTNA

caused a fatal accident on Interstate Highway 26 in July of 2010. A primary point

of contention in this case, as in most design defect cases under South Carolina law,

is whether Plaintiff can offer a "feasible alternative design" that would not have

performed as the tire in question (the "Subject Tire") did under the same

circumstances. *See Branham v. Ford Motor Co.*, 701 S.E.2d 5, 14 (S.C. 2010)

(holding that "the exclusive test in a products liability design case is the risk-utility

test with its requirement of showing a feasible alternative design"). Under South

Carolina law, it is the actual tire as well the alternative design proposed by Plaintiff

that are on trial.[9]

_____

[9] *See id.* at 16 & n.16 (requiring Plaintiff to "point to a design flaw in the product and show how his alternative design would have prevented the product from being unreasonably dangerous. This presentation of an alternative design must include consideration of the costs, safety and functionality associated with the alternative design," an "analysis that asks the trier of fact to determine whether the potential increased price of the product (if any), the potential decrease in the functioning (or utility) of the product (if any), and the potential increase in other safety concerns (if any) associated with the proffered alternative design are worth the benefits that will inhere in the proposed alternative design.").

3

Plaintiff identified as his expert Dennis Carlson who asserts that he will identify a defect in the Subject Tire and provide an alternative feasible design. Defendants have produced to Plaintiff approximately 1,400 pages of confidential and propriety information—schematic drawings, the development file on the tire, and various engineering specifications on the Subject Tire. Moreover, Plaintiff has been afforded access to the Subject Tire and Defendants' testing information concerning that tire.

Despite this extensive discovery, conducted subject to objections raised more than a year before, (Dkt. No. 100-2 at 18–19; Dkt. No. 100-4 at 2), Plaintiff unexpectedly moved years into the litigation to compel production of the Global Design Manual, (Dkt. No. 100), and, in depositions, asked multiple Defendants' witnesses to disclose the Butyl Content of the Subject Tire. The witnesses refused to answer at the instruction of Defendants' counsel. To resolve this late-developing discovery dispute, Defendants opposed the motion to compel, (Dkt. No. 104), and moved for a protective order as to the objectionable line of questioning in order to establish their right to withhold these trade secrets, (Dkt. Nos. 103, 107).

Plaintiff opposed the protective order, asserting (without evidentiary support) that he was entitled to discover those conceded trade secrets. *See* (Dkts. No. 109 at 10; Dkt. No. 128 at 9). Plaintiff argued that his right to discovery was governed by Federal Rule of Civil Procedure 26(c)(1)(G), as interpreted by *Coca-*

4

*Cola Bottling Co. of Shreveport, Inc. v. Coca-Cola Co.*, 107 F.R.D. 288 (D. Del. 1985), and not by consideration of South Carolina's substantive trade secrets law. *See* (Dkt. No. 128 at 8 & n.7).

Defendants strenuously opposed production of the Butyl Content and Global Design Manual, *see, e.g.*, (Dkt. Nos. 103, 105, 107, 116, 130), arguing, as they had "frequently done throughout this litigation," (Dkt. No. 174 at 6), that South Carolina law controlled what must be demonstrated to overcome a claimed trade secret privilege and that South Carolina's stringent standard had not been met. Furthermore Plaintiff had failed to tether his general claim of need to any specific point of fact at issue in the case. (Dkt. No. 116 at 7; Dkt. No. 130 at 4–5.) Defendants also offered a number of affidavits to support the status of the documents as trade secrets and to demonstrate the harm that would befall them should this information be disclosed. *See* (Dkt. Nos. 107-3, 107-4, 130-7). As Defendants pointed out, Plaintiff submitted no declaration or other evidence stating how the trade secrets were relevant to the issues before the Court or that their discovery was necessary to permit Plaintiff to prove that there was a defect or a feasible alternative design. *See, e.g.*, (Dkt. No. 116 at 6–7; Dkt. No. 130 at 4–5).

Moreover, Plaintiffs, despite being afforded months to develop the dispute through numerous briefs, offered no evidence in response to the affidavit of GTRC's Chief Tire Analysis Engineer explaining that the Butyl Content was

5

irrelevant to an analysis of a tire defect. (Doc. No. 103-3; Dkt. No. 130 at 5.) That expert, Terrence L. Parsons, averred that compound formulas, including the content of butyl in the formula for a tire, "do not reveal whether a tire containing those compounds will have satisfactory or unsatisfactory physical properties after it is vulcanized," that the rubber formula cannot be determined from a finished tire, and that proper design, manufacture or the presence of a defect may be determined by examining the tire itself, and not otherwise. *See* (Dkt. No. 103-3 at ¶¶ 5, 13, 15 16; Dkt. No. 130 at 5).

The dispute was referred to a Magistrate Judge who concluded that Defendants could be compelled to disclose the Butyl Content, relying heavily on the reasoning and authority of *Coca-Cola Bottling of Shreveport, Inc. v. Coca-Cola Co.*, 107 F.R.D. 288 (D. Del. 1985), which she quoted, either directly or through other authorities, six times. (Dkt. No. 137 at 3–11.) Although finding that the Butyl Content was a trade secret, disclosure of which, even under a protective order, might well harm Defendants, the Magistrate Judge relied on conclusory assertions, excerpted from the deposition of Plaintiff's expert conducted without reference to the motion, to conclude that discovery was "necessary." (Dkt. No. 137 at 6.)[10] The Magistrate Judge did not address Plaintiff's failure to make any

---

[10] The Magistrate Judge did not engage the evidence presented by Defendants that simply knowing the manufacturing formula of a tire as it had existed, prior to production and curing, would not shed any light on the reasons

6

showing, under any standard, with regard to discovery of the Global Design Manual as it relates to the Subject Tire, simply ordering its disclosure. (Dkt. No. 137 at 2; *see* Dkt. No. 141 at 2.)

Defendants filed objections with the district court, challenging the Magistrate Judge's trade secret rulings with regard to disclosure of the Butyl Content and Global Design Manual. (Dkt. No. 141 at 2–3.) Defendants objected that the Magistrate had applied the wrong legal standard to Plaintiff's request for production, arguing that the correct standard was S.C. Code Ann. § 39-8-60(B), as interpreted by *Laffitte v. Bridgestone Corp.*, and that the showing made by Plaintiff fell far short of this standard. *See* (Dkt. No 141 at 4–5 & n.3, 6–7.) Defendants noted that *Laffitte* had rejected the conclusion of *Griego v. Ford Motor Co.*, 19 F. Supp. 2d 531 (D.S.C. 1998), which had held that the protections provided by S.C. Code Ann. § 39-8-60(B) do not apply to "a product liability action," (Dkt. No 14 at 5 n.3.)

---

that the Subject Tire failed to retain air pressure. Instead, she presumed from Plaintiff's expert's general observations that "the compound used [in] the inner liner" must be "sufficient to restrict the migration of inflation pressurized air" must mean that knowing the manufacturing formula of the inner liner was "a critical component of determining the cause of the tire failure." (Dkt. No. 137 at 6.) The Magistrate Judge further concluded that knowledge of the butyl content was necessary to evaluate a defense, (*id.*), relying upon Mr. Carlson's conclusory statement that he needed "to know what the butyl content" was in order to evaluate the defense "that [the] barrier gauge is also a layer of tire that prevents air permeation into the structure of the fire [sic]." That assertion however is illogical because barrier gauges do not contain butyl. *See* (Dkt. 170-4 at 2–3).

7

Application of the correct standard plainly requires protection from disclosure, Defendants explained, absent any evidence from Plaintiff, or even an explanation, of how "knowing the []butyl content of the inner liner, as opposed to Mr. Carlson's observations of the tire at issue, will demonstrate a defect" or how "the failure to discover this information will adversely affect Plaintiff's proof of the case." (Dkt. No. 141 at 7.) Given that Plaintiff's expert has stated that he will opine that the subject tire was defective for failure to maintain air pressure, as well as under his proposed alternative design, even without knowing the Butyl Content or reviewing the Global Design Manual, Defendants argued that no showing of necessity had been made. (Dkt. No. 141 at 7.) However, the district court, without further briefing or argument, adopted the Magistrate Judge's "order as its own," overruling Defendants' objections. (Dkt. No. 143.)

Defendants then sought reconsideration, arguing that the "determination that Plaintiff met his burden warranting the discovery of trade secret information constitutes a clear error of law" in light of "the relevant case law." (Dkt. No. 170 at 2). Defendants explained that *Coca-Cola Bottling of Shreveport, Inc.*, relied upon by the Magistrate was "contrary to case law relevant to the issues in this matter," (*id.* at 5–7), as that case did not require a showing "with specificity exactly how the lack of information will impair the presentation of the case on the merits to the point [such] that an unjust result is real, rather than a merely possible,

8

threat," (*id.* at 7) (citing cases so holding). Defendants further explained that this was the standard for trade secret protection under a controlling construction of S.C. Code Ann. § 39-8-60 handed down by the Supreme Court of South Carolina. *See* (Dkt. No. 170 at 11–12). In the alternative to reconsideration, Defendants sought certification to this Court.

Plaintiff, in response to the reconsideration motion, offered no additional explanation of or support for the conclusion that disclosure was necessary. Plaintiff did concede that the Magistrate Judge relied heavily on *Coca-Cola Bottling Co. of Shreveport*. (Dkt. No. 174 at 4.) Plaintiff nonetheless opposed Defendant's motion, arguing that "[t]he only law applicable to the issue before the Court is federal law," citing district court decisions from South Carolina. (*Id.* at 4–5.) Plaintiff principally relied on *Griego*, 19 F. Supp. 2d 531, which had held that the South Carolina Trade Secrets Act ("SCTSA"), S.C. Code Ann. § 39-8-10 *et seq.*, "did not apply to any action that is not based on misappropriation of a trade secret or protection against such misappropriation" and so did not apply to a tort/products liability action against an automotive company. *Id.* at 533.

While conceding that this is contrary to *Laffitte* which had adopted a more demanding standard for whether trade secrets must be disclosed and had rejected *Griego*'s interpretation of the SCTSA, Plaintiff argued that South Carolina's interpretation is not binding on federal district courts and has "no place in the

analysis of whether Defendants must produce" the trade secrets. (Dkt. No. 174 at 6–7.) Finally, Plaintiff contended that the issue did not meet the standards for § 1292(b) certification. (*Id.* at 9.)

On January 19, the district court denied the motion for reconsideration, declining "to alter" the Disclosure Order. However, the district court found that "the parties' arguments as to what standard governs the parties' dispute over Defendants' trade secret" was "a controlling question of law as to which there is substantial ground for difference of opinion" and concluded that "an immediate appeal from the order may materially advance the ultimate termination of the litigation." (Dkt. No. 175 at 1.) The Court, *sua sponte*, stayed "[a]ll proceedings in this matter . . . pending Defendants' application" to this Court "and, if granted, during the appeal." (*Id.* at 2.)

Defendants now timely apply for review of that order and seek relief therefrom.

### REASONS FOR GRANTING INTERLOCUTORY REVIEW

There are three reasons why the Court should exercise its discretion to grant interlocutory review of the Disclosure Order. First, there is a longstanding disagreement between the District of South Carolina and the Supreme Court of South Carolina regarding the applicability of the South Carolina Trade Secrets Act to discovery of trade secrets in civil actions; in fact, this is not the first time that

certification of that issue has been sought from a district court. *See, e.g., Griego v. Ford Motor Co.*, 19 F. Supp. 2d 531, 533–34 (D.S.C. 1998) (refusing certification of an order "concerning the applicability of the South Carolina Trade Secrets Act to federal court"). Second, there is a powerful argument that the district court erred in not applying the South Carolina Trade Secrets Act, in light of *Laffitte's* controlling interpretation of South Carolina law and given Federal Rule of Evidence 501. Third, denying discretionary review would put Defendants to the unnecessary hazard of a contempt citation with possible default requiring further appeals of the issue, contrary to 1292(b)'s purpose of avoiding needless harm to the litigants by providing a more efficient way to resolve serious legal questions that arise during the course of litigation.

In certifying the Disclosure Order, the district court recognized these facts and, from its vantage, found that a definitive ruling from this Court now would not delay, but rather advance, the ultimate termination of this litigation, a determination to which this Court should generally defer. Moreover, there can be no question but that the interests in avoiding forum shopping and of federalism weigh in favor of this Court deciding whether the South Carolina law protections for trade secrets apply in federal as well as state civil cases in South Carolina.

While there is no appeal of right of discovery orders, even those ordering production of trade secrets, *see MDK, Inc. v. Mike's Train House, Inc.*, 27 F.3d

11

116, 122 (4th Cir. 1994); *accord In re Naranjo*, 768 F.3d 332, 342 (4th Cir. 2014),

the Supreme Court and this Court have both recognized the propriety of litigants

seeking discretionary review when "confronted with a particularly injurious or

novel privilege ruling," *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 110

(2009), noting that "[t]he 'safety valve' of discretionary interlocutory review under

28 U.S.C. § 1292(b) is frequently a 'better vehicle for vindicating [certain] serious

... claims than the blunt, categorical instrument of [a] § 1291 collateral order

appeal,'" *Al Shimari v. CACI Int'l, Inc.*, 679 F.3d 205, 214 (4th Cir. 2012) (quoting

*Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 883 (1994)); *see, e.g.*,

*Duplan Corp. v. Deering Milliken, Inc.*, 397 F. Supp. 1146, 1185–87, 1198 (D.S.C.

1974) (certifying trade secret and other privilege issues for 1292(b) review by the

Fourth Circuit), *accepting certified order Duplan Corp. v. Deering Milliken, Inc.*,

540 F.2d 1215 (4th Cir. 1976).

### A.     A Well-Developed Split of Authority Exists between the Federal Courts and the Courts of South Carolina on the Scope of Trade Secret Protections for Civil Litigants.

A line of authority in the District of South Carolina holds that "[t]he

applicable standard concerning the discovery of trade secrets is set forth in *Coca–*

*Cola Bottling Co. of Shreveport, Inc. v. Coca–Cola Co.*, 107 F.R.D. 288, 292 (D.

Del. 1985)." *In re Sealed Air Corp.*, 220 F.R.D. 452, 453 (D.S.C. 2004); *accord*

*Mustang Innovation, LLC v. Sonoco Prods. Co.*, No. 4:14-cv-3756, 2015 WL

4508830, at *2 (D.S.C. July 24, 2015); *Anthony v. Atl. Grp., Inc.*, No. 8:09-cv02383, 8:09-cv-02942, 2012 WL 3597122, at *2 (D.S.C. Aug. 20, 2012); *Sensormatic Elecs. Corp. v. Tag Co. U.S. LLC*, No. 4:07-mc-181, 2008 WL 217113, at *2 (D.S.C. Jan. 24, 2008).  This line has continued, unbroken, despite the South Carolina General Assembly's adoption in 1997 of "heightened protection for trade secrets and a greater showing required of persons seeking discovery of such trade secrets," *Griego*, 19 F. Supp. 2d at 532, which protections the District of South Carolina has since 1998 held to be inapplicable to all but trade secret misappropriation claims, *see id.* at 532–33; *accord Sturdivant v. Continental Tire The Americas, LLC*, No. 5:14-cv-02852, 2015 WL 263015, at *3 (D.S.C. Jan. 21, 2015); *cf.* S.C. Code Ann. § 39-8-60.[11]

---

[11] S.C. Code Ann. § 39-8-60(B)(1) – (4) provides that

> [i]n any civil action where discovery is sought of information designated by its holder as a trade secret, before ordering discovery a court shall first determine whether there is a substantial need by the party seeking discovery for the information. 'Substantial need' as used in this section means: (1) the allegations in the initial pleading setting forth the factual predicate for or against liability have been plead with particularity; (2) the information sought is directly relevant to the allegations plead with particularity in the initial pleading; (3) the information is such that the proponent of the discovery will be substantially prejudiced if not permitted access to the information; and (4) a good faith basis exists for the belief that testimony based on or evidence deriving from the trade secret information will be admissible at trial."

13

The District of South Carolina has so held despite the fact that nearly seven years ago, the Supreme Court of South Carolina made clear that "that the plain language of § 39–8–60(B) clearly indicates that trade secrets may be protected during discovery not only in misappropriation cases, but in 'any civil action' where trade secrets are sought during discovery" and that the SCTSA affords increased protection for trade secrets beyond that recognized by the ordinary balancing test of *Coca-Cola*. *Laffitte v. Bridgestone Corp.*, 674 S.E.2d 154, 161–62 (S.C. 2009) (quoting S.C. Code Ann. § 39-8-60(B)).

To meet the requirements of the SCTSA, the party seeking disclosure of trade secrets must show that the information is "relevant not only to the general subject matter of the litigation, but also relevant specifically to the issues involved in the litigation," *id.* at 163, and that its disclosure is necessary by showing "'with specificity exactly how the lack of the information will impair the presentation of the case on the merits to the point that an unjust result is a real, rather than a merely possible, threat,'" *id.* (quoting *In re Bridgestone/Firestone, Inc.*, 106 S.W.3d 730, 733 (Tex. 2003)). Finally "'suitable substitutes must be completely lacking,'" *id.* (quoting *Bridgestone Am. Holding, Inc. v. Mayberry*, 878 N.E.2d

---

For commentary on this provision, *see* Ranee Saunders, *If I Told You Then I'd Have to Kill You: The Standard for Discovery of Trade Secrets in South Carolina*, 61 S.C. L. REV. 717, 718 (2010) (noting that "the specific language of this statute" is "unique to South Carolina," and that "the test as applied by the supreme court [in *Laffitte*] affords increased protection to the holder of trade secrets than that of other jurisdictions.").

14

189, 196 (Ind. 2007)); "[i]n other words, the trial court must evaluate whether there are reasonable alternatives available to the party seeking the discovery of the information, and ultimately, the trial court must require the discovery of a trade secret only when the issues cannot be fairly adjudicated unless the information is available," *id.* (quotation marks omitted).

Applying this standard to an order directing disclosure by a tire manufacturer of its steel belt skim stock formula, the Supreme Court of South Carolina in *Laffitte* held that this standard had not been met where the proffered "expert testimony does not establish that if the experts were provided the skim stock formula and related manufacturing information, they would necessarily be able to opine on a defect; and (2) other methods, such as testing the tire itself, are available." *Id.*; *see id.* at 157. The Court found that the "experts' reasons for opining that the formula was necessary for their analyses do not rise to the level of specificity required for discovery of trade secrets" as one "did not elaborate on why it was "absolutely necessary" that he know the skim stock formula in order to render his expert opinion in the matter," another failed to explain "how the occurrence of a tread belt separation should result in the automatic conclusion that the belt separation was related to the initial physical properties of the tire requiring disclosure of the skim stock formula," and a third "provided no indication in his response at deposition that he had examined and subsequently discarded the

alternative theories propounded in his affidavit for the tire's failure." *Id.* at 163–64. Thus, the Court held compelled disclosure unwarranted on the ground that Plaintiff had failed "to adequately articulate how disclosure of the skim stock formula is critical to the analysis in this case" or to provide a "detailed indication as to how the case is incapable of being fairly adjudicated without the trade secret information." *Id.* at 164. Furthermore, the trial court was found to have erred in ordering disclosure without analysis of "the availability of reasonable alternatives to the discovery of the trade secret" much less any conclusion that this information provided "the sole, or even the best, way to test for defects." *Id.*

It cannot be gainsaid that *Laffitte* requires a much more exacting analysis than that called for by *Coca-Cola Bottling* or that performed by the Magistrate Judge who similarly ordered disclosure without such showings of relevance, necessity or suitable alternatives. (Dkt. No. 137 at 4–6.) Were there any doubt that the applicable standard is dispositive of whether disclosure should be ordered, Plaintiff's dogged opposition to consideration of *Laffitte* and the district court's certification of which standard applies should resolve it.

### B. The District of South Carolina Erred in Denying Civil Litigants the Trade Secret Protections of South Carolina Law, in Contravention of Federal Rule of Evidence 501, and Well-Established Case Authority.

Application of federal common law, rather than South Carolina law as interpreted by the Supreme Court of South Carolina, to determine the scope of

16

Defendants' trade secret privilege in a South Carolina claim is obvious error.

Under Federal Rule of Evidence 501, "in a civil case, state law governs privilege

regarding a claim or defense for which state law supplies the rule of decision."

*See, e.g., Herbert v. Lando*, 441 U.S. 153, 182 (1979) (citing Rule 501 and holding

that because the cause of action arose under state law, the scope of any non-

constitutionally grounded claim of privilege must be that of state law).

The interpretation of S.C. Code Ann. § 39-8-60 by the Supreme Court of

South Carolina—that those protections apply to discovery in all civil actions—is

conclusive of that statute's meaning. *See Republican Party of Minnesota v. White*,

536 U.S. 765, 809 (2002) ("We are, of course, bound to accept the interpretation of

[the State's] law by the highest court of the State." (quotations marks omitted)).

Moreover, *Laffitte* expressly rejected *Griego*'s holding that the SCTSA does not

apply, depriving it of any authority whatsoever. *See* 674 S.E.2d at 161 n.9.  The

District of South Carolina's refusal to heed the law of South Carolina is not merely

error, but offends principles of federalism and comity, calling for an exercise of

this Court's supervisory authority.

Those cases which our research has disclosed which have had occasion to

consider whether state trade secret laws apply to discovery in federal courts have

followed Federal Rule of Evidence 501 without exception in applying the relevant

state's law. *See, e.g., Pasadena Oil & Gas Wyoming LLC v. Montana Oil Props.*

17

*Inc.*, 320 F. App'x 675, 677 (9th Cir. 2009) (noting that "[s]tate privilege law generally applies to state claims brought in federal court pursuant to diversity jurisdiction, Fed.R.Evid. 501," and applying that rule to a claim of trade secrets privilege); *McKellips v. Kumho Tire Co.*, 305 F.R.D. 655, 662 (D. Kan. 2015) ("Although there is no federal discovery privilege for trade secrets, state law governs privileges in civil diversity cases." (internal footnotes omitted)); *Davis v. Leal*, 43 F. Supp. 2d 1102, 1110 (E.D. Cal. 1999) (applying California law of trade secrets to question of whether party was entitled to discovery of certain information in a federal civil case); *Auto Owners Ins. Co. v. Totaltape, Inc.*, 135 F.R.D. 199, 203 (M.D. Fla. 1990) ("Florida privilege law controls in this declaratory judgment action for which Florida law provides the rule of decision. Therefore, defendant's federal case law does not apply" to trade secret objection to withholding discovery); *cf. Moloney v. United States*, 204 F.R.D. 16, 21 (D. Mass. 2001) (observing that "Federal Rule of Evidence, Rule 501 makes states law privileges applicable in many federal court cases," citing trade secrets protection as an example). This consensus follows naturally from the plain language of Rule 501, and also finds support in the Advisory Committee Notes to the Statute at Large adopting it. *See* 1974 Advisory Comm. Notes, Pub. L. No. 93-595, § 1, 88 Stat. 1926, 1933 (Jan. 2, 1975) (adopting Fed. R. Evid. 501 and noting that listed in an earlier draft among the privileges was that of "trade secrets").

18

### C. The Certified Question Is Controlling, Is Subject to a Substantial Ground for Difference of Opinion, and an Immediate Appeal May Materially Advance the Ultimate Termination of the Litigation.

In certifying the Disclosure Order, the district court correctly found that the elements of 28 U.S.C. § 1292(b) have been satisfied. The certified question is controlling, there is a substantial ground for a difference of opinion because of a court split, and interlocutory review may materially advance the ultimate termination on the merits because immediate review permits an orderly decision without the necessity for a contempt with the risk of default. Certification is consistent with the Supreme Court's counsel that "when a privilege ruling involves a new legal question or is of special consequence, [the] district courts should not hesitate to certify an interlocutory appeal," *Mohawk Industries*, 558 U.S. at 110. It is also a faithful application of the view that "controlling means serious to the conduct of the litigation, either practically or legally," *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3d Cir. 1974) (en banc), and consistent with the recognition that resolving a privilege issue whose importance transcends that of any particular case avoids "harm to a party pendent lite from a possibly erroneous interlocutory order and . . . wasted . . . litigation expense," and, by moving past that issue, materially advances the case to ultimate termination on the merits. *Katz*, 496 F.2d at 755.

It cannot be supposed that the district court certified the Disclosure Order lightly, as it had previously declined certification under § 1292(b) in this very case stating that "the district court should grant this extraordinary remedy only in exceptional circumstances where early appellate review would avoid a protracted and expensive litigation process." *Hartsock v. Goodyear Dunlop Tires N. Am. LTD*, No. 2:13-CV-00419-PMD, 2014 WL 11022098, at *3 (D.S.C. June 16, 2014) (quotation marks omitted). Having considered the probable gains and losses of immediate appeal on the question of whether to compel disclosure, the district court properly elected to certify the matter to this Court. (Dkt. No. 175.)

## CONCLUSION

This Court should permit an appeal following which it should reverse and remand with instructions in keeping with South Carolina law and Federal Rule of Evidence 501.

Respectfully Submitted,

E. Duncan Getchell, Jr.
  *Counsel of Record*
Michael H. Brady
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia 23219-3916
(804) 775-4388 (Telephone)
*Counsel for Petitioners Goodyear Dunlop*
*Tires North America Ltd., and The*
*Goodyear Tire & Rubber Company*

20

## CERTIFICATE OF SERVICE

I hereby certify that on January 29, 2016, in accordance with Fed. R. App. P. 5, I filed by hand an original and three copies of the foregoing Petition for Permission To Appeal from Certified Interlocutory Order with the Clerk of this Court and pursuant to Fed. R. App. P. 25(c)(1)(B) & (D) served a true and correct copy of the same by mail and by electronic mail upon counsel for the Plaintiff at the addresses listed below:

Mark Charles Tanenbaum, Esq.
mark@tanenbaumlaw.com
Mia Lauren Maness, Esq.
mia@tanenbaumlaw.com
Mark C. Tanenbaum, P.A.
P.O. Box 20757
Charleston, SC 29413-0757

Donald R. Fountain Jr., Esq.
Dfountain@ClarkFountain.com
Clark, Fountain, La Vista, Prather, Keen & Likkity-Rubin, LLP
1919 North Flagler Drive
West Palm Beach, FL 33407

E. Duncan Getchell, Jr.

# EXHIBIT 1

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

Theodore G. Hartsock, Jr., as Personal        )
Representative of the Estate of Sarah         )
Mills Hartsock,                               )
                                              )        Civil Action No.  2:13-cv-00419-PMD
                    Plaintiff,                )
                                              )               **O R D E R**
          v.                                  )
                                              )
Goodyear Dunlop Tires North America           )
LTD, *a foreign corporation*; and             )
The Goodyear Tire & Rubber                    )
Company,                                      )
                                              )
                    Defendants.               )
                                              )

This matter is before the undersigned United States Magistrate Judge upon Plaintiff's Motion

to Compel (Dkt. No. 100) as well as three Motions for Protective Order (Dkt. No. 103; Dkt. No. 105;

Dkt. No. 107) filed by Defendants. By the Order of the Honorable Patrick Michael Duffy, these

motions were referred to the undersigned. (Dkt. No. 112.) A hearing was held on these matters on

August 31, 2015, during which the Motion for Protective Order (Dkt. No. 105) was granted as

unopposed. (*See* Dkt. No. 123.) Additionally, Plaintiff's Motion to Compel (Dkt. No. 100) was

granted in part and denied in part. Two of Defendants' Motions for Protective Order (Dkt. No. 103;

Dkt. No. 107) were taken under advisement. (*See* Dkt. No. 123.) Pursuant to the undersigned's

instructions at the hearing, the parties have filed supplemental materials as to the motions taken under

advisement. (*See* Dkt. No. 129; Dkt. No. 130; Dkt. No. 128.) After reviewing the parties'

supplemental filings, the undersigned conducted a telephone conference on September 21, 2015.

(Dkt. No. 132.) During the telephone conference, the undersigned gave the parties ten days to

propose alterations to the confidentiality order. (Dkt. No. 132.) On October 1, 2015, counsel for

Defendants filed a letter indicating "that the danger and potential damage [of ordering Defendants

to produce trade secret information] cannot be eliminated with revisions to the Confidentiality

1

Order." (Dkt. No. 136.) This Order memorializes the Court's rulings made at the hearing and rules on the issues taken under advisement.

**Background**

Plaintiff Theodore G. Hartsock, Jr., as Personal Representative of the Estate of Sarah Mills Hartsock, filed the instant action against Defendants Goodyear Dunlop Tires North America LTD ("Dunlop") and Goodyear Tire & Rubber Company ("Goodyear"). (*See* Dkt. No. 22.) In his Amended Complaint, Plaintiff alleges that on July 6, 2010, a defective tire–manufactured by the Defendants–on a recreational vehicle failed, causing the "motor home [to] cross[] the median of Interstate Highway 26, bursting through the dividing cable barrier and striking Plaintiff's decedent's vehicle head on." (Am. Compl. ¶¶ 16, 29.) Plaintiff's Amended Complaint seeks damages for survival and wrongful death, and lists the following causes of action: negligence, strict liability, and breach of express and implied warranties. (*See generally* Dkt. No. 22.)

**Discussion**

**A. Plaintiff's Motion to Compel (Dkt. No. 100)**

In the Motion to Compel, Plaintiff seeks an order compelling "full responses" to Plaintiff's discovery request numbers 9, 57, 68, 96, and 107. (*See* Dkt. No. 100 at 1 of 15.) Plaintiff's motion was granted in part and denied in part at the hearing. Specifically, Plaintiff's motion was granted as to Exhibit K to Plaintiff's motion. Plaintiff's motion was additionally granted as to the "Subject Tire," the G670RV 295/80R22.5 tire. Plaintiff's motion was denied in all other respects.

Plaintiff has a right to reconvene the deposition of Mr. Koerner as to any documents produced to Plaintiff after the deposition of Mr. Koerner; Plaintiff shall identify such documents, in writing, by Bates number.

To the extent Defendants have not yet supplemented their discovery responses in conformance with this ruling, they shall do so within ten days of the date of this Order.

## B. Motion for Protective Order (Dkt. No. 105)

In this motion, Defendants request a protective order "preserving its privileged objections and sustaining counsel's instructions to the witness, Daniel Badzinski, not to answer questions protected by the attorney-client privilege and/or work-product doctrine; and, pursuant to Rule 26(c)(1), Fed.R.Civ.P, to prevent disclosure of highly confidential trade secrets." (Dkt. No. 105 at 9-10 of 10.) This motion was granted as unopposed.

## C. Motion for Protective Order (Dkt. No. 107)

This Motion for Protective Order (Dkt. No. 107) pertains to the deposition of Denise Seiler, an employee of Defendant Goodyear Dunlop Tires North America. According to Defendants, Ms. Seiler was identified as a Rule 30(b)(6) deponent "to testify concerning various areas including the design and development of the Tire at Issue." (Dkt. No. 107 at 2-3 of 11.) Two sets of questions (Questions A and Questions B) are at issue in the motion, although Plaintiff consents to the protective order as to Questions B. (*See* Dkt. No. 107 at 3-5 of 11; Dkt. No. 114 at 2 of 6.) Accordingly, as to Questions B, Defendants' motion is granted as unopposed.

Questions A pertain to the butyl content of the Subject Tire's inner liner; Questions A are as follows:

Q. All right. What is the percentage of butyl rubber in the innerliner for the G670 tire?

MR. TOOLE: I'm instructing you not to answer based on the reasons I've instructed every other witness since last Friday.

BY MR. FOUNTAIN:
Q. Do you know the butyl content of the innerliner for the G670 tire?

MR. TOOLE: I'm instructing you not to answer based on the same reasons.

…

Q. Has [there] Been any change to the [butyl] content so the innerliner of the G670 from the time production began in May of 2003 to the present?

MR. TOOLE: Same instruction.

(Dkt. No. 107 at 3 of 11.)

3

In his Response in Opposition, Plaintiff "does not contend that the butyl content of the subject inner liner is not a trade secret." (Dkt. No. 114 at 4.) Instead, Plaintiff asserts the butyl content of the subject liner "is relevant to the proof of his case–it explains in whole or in part the reasons for the tire's failure and the manner in which the subject tire failed." (Dkt. No. 114 at 4-5.) Plaintiff explains his theory of the case as follows:

> Plaintiff's main defect theories are that the design of the G670RV 295/80R22.5 tire, as well as its manufactured condition, allowed inflation pressurized air to migrate from the air chamber into the structure of the tire. The pressurized air in the tire structure and belts caused separations within the tire; interaction of the air with the compounds inside the tire caused those compounds to degrade, leading to separation of the tire plies and blowout. Two factors influence the ability of the air to migrate from the air chamber into the body of the tire; 1) the amount of butyl rubber in the compound of the inner liner, and 2) the thickness of the inner liner. Testimony of Defendants employees, coupled with Goodyear documents, has established that an inner liner gauge thinner than specified by the governing design specification required a tire to be scrapped. . . .

> Of equal importance to Plaintiff's defect theory is the rubber compound from which the inner liner was manufactured. Seiler testified that the inner liner is the only component of the tire that contains butyl. She also testified, as did Terrance Parsons, that the butyl compounds are resistant to air permeation into the structure of the tire. Whether the butyl content of this inner liner was 100 percent or 10 percent is relevant to the performance of the inner liner and additional design defects in the G670RV 295/80R22.5. Insufficient butyl content will contribute to intracarcass pressurization and the failure mode of the subject tire.

(Dkt. No. 114 at 2-3.)

Plaintiff asserts the Motion for Protective Order (Dkt. No. 107) should be denied as to the butyl content of the tire liner because (a) Plaintiff's "ability . . . to prove his case outweighs the potential harm to Defendants," and (b) the protective order in place in the case *sub judice* "will provide the protection Defendants seek for their trade secret." (Dkt. No. 114 at 5.) Plaintiff requests an order "denying Defendants' motion as to Seiler's knowledge of the butyl content of the G670RV 295/80R22.5 inner liner, and allowing Plaintiff to reconvene Seiler's deposition to inquire into this subject." (*Id.* at 5.)

"There is no absolute privilege to protect trade secrets from disclosure during the discovery process." *In re Pechiney Plastic Packaging, Inc. v. Curwood, Inc.*, 220 F.R.D. 452, 452 (D.S.C.

4

2004) (citing *Dunlap Corp. v. Deering Milliken, Inc.*, 397 F. Supp. 1146, 1185 (D.S.C. 1974)). As

Judge Floyd stated in *In re Pechiney*,

> The party resisting the discovery must demonstrate to the Court that the information being sought is a trade secret and that its disclosure might be harmful. Once shown, the burden shifts to the party that seeks the discovery to establish the relevance of the trade secret to the lawsuit and that it is necessary to the action. If relevance and necessity are established, then the Court "must balance the need for the information against the injury that would ensue if disclosure is ordered."

*Id.* (quoting and citing *Coca-Cola Bottling of Shreveport, Inc. v. Coca-Cola Co.*, 107 F.R.D. 288, 292

(D. Del. 1985)). "The level of necessity that must be shown is that the information must be necessary

for the movant to prepare its case for trial, which includes proving its theories and rebutting its

opponent's theories." *Coca-Cola Bottling of Shreveport*, 107 F.R.D. at 293 (citations omitted). In

assessing injury, the "relevant injury . . . is not the injury that would be caused by public disclosure,

but the injury that would result from disclosure under an appropriate protective order." *Id.* "[I]t is

presumed that disclosure to a party who is not in competition with the holder of the trade secret will

be less harmful than disclosure to a competitor." *Id.* (citations omitted). The *Coca-Cola* court further

stated,

> The balance between the need for information and the need for protection against the injury caused by disclosure is tilted in favor of disclosure once relevance and necessity have been shown. As the Supreme Court has recognized, "orders forbidding any disclosure of trade secrets or confidential commercial information are rare." *Federal Open Market Committee v. Merrill*, 443 U.S. at 362 n. 24, 99 S.Ct. at 2813 n. 24; *see also Morrison-Knudsen Co. v. Department of Army*, 595 F.Supp. 352, 355 (D.D.C.1984), *aff'd mem.*, 762 F.2d 138 (D.C.Cir.1985). A survey of the relevant case law reveals that discovery is virtually always ordered once the movant has established that the secret information is relevant and necessary. *See, e.g., Pennwalt Corp. v. Plough, Inc.*, 85 F.R.D. at 259; *Struthers Scientific & Industrial Corp. v. General Foods Corp.*, 51 F.R.D. at 154; *United States v. An Article of Drug*, 43 F.R.D. at 189; *Centurion Industries*, 665 F.2d at 326; *Covey Oil Co. v. Continental Oil Co.*, 340 F.2d at 999; *Kleinerman v. United States Postal Service*, 100 F.R.D. at 69–70; *Davis v. General Motors Corp.*, 64 F.R.D. 420, 422 (N.D.Ill.1974); *Maritime Cinema Service Corp. v. Movies En Route, Inc.*, 60 F.R.D. 587, 590 (S.D.N.Y.1973); *Spartanics, Ltd. v. Dynetics Engineering Corp.*, 54 F.R.D. 524, 526 (N.D.Ill.1972); *cf. Cleo Wrap Corp. v. Elsner Engineering Works, Inc.*, 59 F.R.D. 386, 388 (M.D.Pa.1972) (discovery denied where relevance slight, need small, and harm great). The reason for allowing the discovery of trade secrets whenever they are needed to advance the just adjudication of a lawsuit is simple: in the absence of an applicable privilege,

"[j]udicial inquiry should not be unduly hampered." *Covey Oil Co. v. Continental Oil Co.*, 340 F.2d at 999.

*Coca-Cola Bottling of Shreveport*, 107 F.R.D. at 293.

In the opinion of the undersigned, while the butyl content of the Subject Tire does constitute a trade secret, Plaintiff has established that the information is relevant and necessary. A careful reading of the report of Plaintiff's expert indicates that the butyl content of the tire is a critical component of determining the cause of the tire failure in the case *sub judice*. (*See* Pl.'s Ex. 4 at 10-11.) Plaintiff's expert specifically states that "[i]f the compound used and the manufactured thickness of the inner liner are not sufficient to restrict the migration of inflation pressurized air through the inner liner and into the structure of the tire, a known process referred to as pressurization of the carcass or intra carcass pressurization occurs." (*Id.* at 11.) This expert further indicated that the tire at issue in the case *sub judice* suffered intra carcass pressurization. (*Id.* at 20.)

The undersigned has reviewed the portions of Plaintiff's expert's deposition provided to the Court. (*See* Dkt. No. 128 Ex. F.) Defense counsel inquired–numerous times–about the expert's feasible, alternative design to the Subject Tire. (*See id.* at 188-89, 193-96, 204-05) The expert's response indicated his proposed alternative design contained a specified butyl content. (*Id.* at 188-89, 193-96, 204-05, 323-24.) The expert further indicated that in order to assess one of the defense theories of the case, he needed the butyl content of the Subject Tire. (*Id.* at 325.)

Given all that Plaintiff has presented, it is difficult to imagine what more Plaintiff should be required to present in order to establish relevance and necessity. In the opinion of the undersigned, Plaintiff has met his burden. As noted above, if relevance and necessity are established, then the Court "must balance the need for the information against the injury that would ensue if disclosure is ordered." *In re Pechiney*, 220 F.R.D. at 452. In assessing injury, the "relevant injury . . . is not the injury that would be caused by public disclosure, but the injury that would result from disclosure under an appropriate protective order." *Coca-Cola Bottling of Shreveport*, 107 F.R.D. at 293.

In Defendants' supplemental briefing, Defendants complain–for the first time–that Plaintiff's expert "has a long history of failing to respect the intellectual property rights of tire companies" and that "courts have consistently found his views concerning protection of and actions regarding confidentiality of tire company information wanting." (Dkt. No. 130 at 2.) The undersigned will review the materials submitted by the Defendants in reverse chronological order. Defendants presented an "Amended Protective Order" issued on July 1, 2010 by the United States District Court for the Southern District of Texas in *Hobbs v. Goodyear Dunlop Tires of North America, Ltd.*, Civ. A. No. H-09-1765. (*See* Dkt. No. 130-3.) That Order provided, *inter alia*,

> Confidential Documents and Information shall not be given, shown, made available, discussed or otherwise communicated in any way except to a "Covered Person," defined as follows . . . Independent professional engineers, accident reconstruction or other independent experts retained by a party or an attorney of record to assist in the preparation of this litigation, other than Dennis Carlson. If Mr. Carlson is consultant in this case, a court hearing shall be held in order to determine his access to any protected documents or testimony.

(Dkt. No. 130-3 at 3 of 11.) In *Galle v. The Goodyear Tire & Rubber Company, et al.*, Civ. A. No. 2007-CI-00418, the "First Amended Protective Order," which was issued on October 20, 2008, provides as follows: "Under no circumstances shall Dennis Carlson receive any protected or confidential documents of The Goodyear Tire & Rubber Company since the Court has found that he does not appear to take protected orders seriously." (Dkt. No. 130-2 at 5 of 22.)

On September 25, 2008, an attorney for Michelin North America, Inc. sent a letter to Mr. Carlson. (Dkt. No. 130-5.) That letter stated, *inter alia*,

> It seems that you have to be periodically reminded of your obligations and agreements with Michelin. I am enclosing, again, a copy of your January 2000 Settlement Agreement with MNA and MARC. Specifically, I refer you to Paragraph 4 which sets forth in detail the only information you are allowed to reveal regarding your employment at MARC, and the information you obtained as a result of it.
> I have been provided with a supplemental letter report you prepared in *Ramos v. Goodyear* dated September 5, 2008. In that report you purport a tolerance for belt splices at Michelin and Michelin's quality assurance procedures. This is the type of confidential information specifically addressed in the Settlement Agreement and you have now revealed confidential and trade secret information to one of Michelin's competitors. Michelin insists that you immediately withdraw the report, inform all parties to the case that you cannot render the opinions contained in it because it is a

violation of your agreements with Michelin, and retrieve all copies of the report and send them to me along with your certification that none exist other than the ones you send to me.

(Dkt. No. 130-5 at 2 of 13.)

On April 7, 2008, in *Crowther v. Goodyear Tire & Rubber Corporation*, Case No. 06041981 in Utah County, Utah, Mr. Carlson deposed as follows:

> Q. Are you aware of any published testing, scientific studies or peer-reviewed literature indicating that waviness at the belt edge is a defect in the tire?
>
> A. There are many company documents that indicate that, but every company I know of has a tolerance for joints and belt edges.
>
> Q. I am going to object, nonresponsive. Are you talking about protected documents of other tire companies?
>
> A. Yes.
>
> Q. Then why are you talking about them?
>
> A. I can tell you the general substance of what they say.

(Dkt. No. 130-6 at 2 of 4.)

In *Nevil v. Ford Motor Co.*, Civ. A. No. 294-015, 1999 WL 1338625 (S.D. Ga. Dec. 23, 1999), Judge Bowen found Mr. Carlson in contempt of court on December 23, 1999. Judge Bowen stated in his order,

> [I]t is evident that Mr. Carlson disclosed information in his deposition testimony about the General Tire documents covered by the Protective Order. At several points in his testimony, Mr. Carlson discloses specific information contained in General Tire studies. Even if this general information is already in the public domain, his testimony reveals that he learned of this information from General Tire documents. Assertions that this evidence came from specific General Tire documents violates the terms of the Protective Order. Accordingly, I find that Mr. Carlson's actions are in contempt of this Court.

*Nevil*, 1999 WL 1338625, at *4.

Finally, in *Michelin Americas Research & Development Corp. v. Carlson*, C/A No. 96-CP-23-2943, Judge Simmons issued an order on July 24, 1997 in Michelin's action against Carlson (a former employee of Michelin) wherein Judge Simmons found that "the specific information disclosed

8

by Carlson in the <u>Wilson</u> affidavit was a trade secret or confidential information prior to its disclosure." (Dkt. No. 130-4 at 6 of 8.) Carlson was "directed to comply with and restrained from violating the non-disclosure agreements previously executed." (*Id.* at 7 of 8.)

Having reviewed the Defendant's submissions, Defendants have certainly shown the *possibility* of injury in the disclosure. However, in balancing the need for the information against the injury that would ensure if disclosure is ordered, the undersigned concludes the balance weighs more heavily in favor of the need for the information. As detailed above, Plaintiffs have established the need for the information and its relevance. Moreover, Defendants' arguments about Mr. Carlson have arisen at the end of this case. Defendants certainly knew Mr. Carlson would serve as an expert witness for Plaintiff by July 6, 2015, when Plaintiff filed his designation of experts and provided Defendants with a copy of Mr. Carlson's expert report. (*See* Dkt. No. 118; *see also* Pl. Ex. 4 to Hr'g of Aug. 31, 2015.)[1] At the hearing on August 31, 2015, however, counsel for Defendants did not voice any concern regarding Mr. Carlson. The concern was first raised to the Court on September 15, 2015, via supplemental briefing. (*See generally* Dkt. No. 130.) During the telephone conference of September 21, 2015, counsel for Plaintiff indicated that, at this point, Mr. Carlson has already seen everything that has been produced. (Hr'g Tr. at 11, Sept. 21, 2015.)

At the time Defendants first raised their concern, only seventeen days remained in the discovery period. (*See* Dkt. No. 98; Dkt. No. 130.) In addition, the undersigned asked counsel for Defendants–without waiving Defendants' position that the requested material is not discoverable–to confer with counsel for Plaintiff and propose language to strengthen the protection afforded by the confidentiality order. (Hr'g Tr. at 10-13, Sept. 21, 2015.) Defendants' position is that "the danger and potential damage cannot be eliminated with revisions to the Confidentiality Order." (Dkt. No. 136.)

Although Defendants have certainly raised the *possibility* of injury due to the disclosure to Mr. Carlson, the Plaintiff's *actual, demonstrated* need for that information is outweighed by the

---

[1] During the telephone conference on September 21, 2015, counsel for Plaintiff indicated that Defendants were aware of Mr. Carlson's participation in this case as early as June of 2013. (*See* Hr'g Tr. at 6, Sept. 21, 2015.)

potential injury. Many of the items produced by Defendants to support their argument that Carlson should not have the at-issue information are in the distant past. And although the protective orders in *Hobbs* and *Galle* limit Mr. Carlson's access to confidential information, counsel for Plaintiff indicated during the telephone conference that Mr. Carlson may not have even been involved in those cases. (Hr'g Tr. at 9–10, Sept. 21, 2015.) In light of Plaintiff's demonstrated need for the information, the fact that many of the items presented by Defendants pertain to the distant past, and the fact that Defendants first raised this concern after the hearing and a mere seventeen days prior to the close of discovery, Defendants' Motion for Protective Order (Dkt. No. 107), as it pertains to butyl content, is denied. Plaintiff may reconvene the deposition of Ms. Seiler if Plaintiff wishes to do so.

### D. Motion for Protective Order (Dkt. No. 103)

In this Motion for Protective Order, Defendants seek an order "protecting from disclosure certain privileged information addressed during the deposition of Terry Parsons, held on April 17, 2015. Defendants further seek protection . . . from Plaintiff's demand that Goodyear identify it's confidential, trade secret compound formula." (Dkt. No. 103 at 1 of 12.) As set forth herein, Defendants' Motion for Protective Order (Dkt. No. 103) is granted in part and denied in part.

### 1. Butyl Content

Defendants contend that certain information sought in Parsons' deposition constitutes confidential trade secret information. (*See* Dkt. No. 103 at 9 of 12.) The following questions are at issue herein:

> Q. Do you know the butyl content of the inner liner of the Hartsock case, Hartsock tire?
>
> MR. TOOLE: I'm going to instruct you not to answer that question.
>
> MR. FOUNTAIN: Why?
>
> MR. TOOLE: Based on trade secret.
>
> …
>
> Q. Okay. Do you know the halobutyl content or the butyl rubber content of the inner line for the tire in this case?

10

A. I have an idea.

Q. Okay. Can you tell me what your idea is.

MR. TOOLE: I'm instructing him not to answer. You can ask the same question again and again I'm not going to allow it.

(Dkt. No. 103 at 4 of 12.)

For the reasons discussed above with respect to the Motion for Protective Order as to Seiler's deposition (Dkt. No. 107), Defendants' Motion for Protective Order (Dkt. No. 103) is denied to the extent the motion pertains to butyl content.

### 2. Attorney-Client Privilege and Work-Product Doctrine

Defendants assert that during his deposition, Mr. Parsons "was asked certain questions which required answers protected by the attorney-client privilege and the work-product doctrine." (Dkt. No. 103 at 3 of 12.) Defendants assert the following questions implicate the attorney-client privilege:

Q. And there is no real dispute that one of your main job duties is to examine claim tires that come to Goodyear where somebody says I bought a Goodyear tire, I had a problem that either caused property damage to my vehicle, it is in excess of 15 thousand, it caused an injury or caused a death, true?

MR. TOOLE: Objection. Form.

A. We examine claim tires as you described. If it is a property damage claim in excess of 15 thousand, if it's bodily injury or a death, we'll examine those. We'll also examine tires that are involved in a litigation of some kind.

Q. And you did that for this case. You examined the tire that was the subject of this case, the Hartsock case, right?

A. Yes, I did.

MR. TOOLE: I'm instructing you not to answer.

MR. FOUNTAIN: On what basis?

MR. TOOLE: He was asked to inspect the tire based on my request or my law firm's request or the request of the legal department at Goodyear Tire.

...

11

Q. Did you attempt to measure the inner liner thickness for the Hartsock tire?

MR. TOOLE: Don't answer.

Q. Did you reach a conclusion about the cause of the failure of the Hartsock tire?

MR. TOOLE: Don't answer.

(Dkt. No. 103 at 3-4 of 12.)

Defendants assert the following questions implicate the work-product doctrine:

Q. You did see the early warning document?

A. No. I saw an early warning standard document that discussed what an early warning was or is.

MR. TOOLE: If it's something shown to you by counsel, I'm instructing you not to answer. If you saw it other than with me you can answer.

Q. What did you see, I'm curious?

MR. TOOLE: If you saw whatever you are referring to, if you saw it with me being counsel of record, don't answer the question. If you saw it outside of with me you can answer.

A. I saw it with counsel.

(Dkt. No. 103 at 4-5 of 12.)

In opposing Defendants' motion as to the attorney-client privilege and the work-product doctrine, Plaintiff essentially contends that matter has already been ruled upon by the court. (*See* Dkt. No. 109 at 2-5 of 11.) At the April 2014 hearing, Judge Duffy allowed supplemental briefing "on the issue of whether employees Jim Stroble and Terrence Parsons are non-testifying experts who are exempt from giving a deposition under Rule 26(b)(4)(D) of the Federal Rules of Civil Procedure." (Dkt. No. 83 at 5.) Judge Duffy denied Defendants' Motion for a Protective Order with respect to Parsons; his May 5, 2014 Order stated, *inter alia*,

A number of courts have found that in-house experts never fall within the ambit of Rule 26(b)(4)(D). Other courts, however, have recognized instances where an in-house expert can be considered "specially employed in anticipation of litigation" and thus fall within the protection of the rule. Notably, in cases finding that a regular employee may be deemed an in-house expert immune from discovery, the

12

courts seem to require that, in addition to being in anticipation of litigation, the special employment be on a project other than the kind the employee normally is engaged in.

The Court need not weigh in on which line of cases is correct; under either approach, neither Mr. Stroble nor any engineer in his department is subject to protection under Rule 26(b)(4)(D). The record evidence establishes that Mr. Stroble is the head of the Product Analysis Department and manages a team of three engineers. The duties of the engineers in that department include analyzing tires and field scenes that are involved with either a claim or an accident. In fact, there is no indication in the record that the engineers have any duties or responsibilities other than analyzing these tires and field scenes. According to Mr. Parsons' deposition testimony in the *Green* case, each engineer, including Mr. Stroble, looks at every tire that comes through the department. Therefore, when Mr. Stroble and the other engineers examined the Tire at Issue, they were not performing work outside the scope of their regular employment duties nor were they given a project that they would not ordinarily work on. The record thus demonstrates that Mr. Stroble and the engineers in the Product Analysis Department are regular employees of Defendants whose regular job duties include analyzing tires like the Tire at Issue. In other words, Mr. Stroble "is simply a general employee of the party not specially employed on the case." Fed. R. Civ. P. 26(b)(4)(D) advisory committee's note. Based on these facts, the Court concludes that neither Mr. Stroble nor any other engineer in that department (including Mr. Parsons) is "retained or specially employed" within the meaning of Rule 26(b)(4)(D).

(Dkt. No. 83 at 6-8 (citations omitted).)

Defendants filed a Motion for Reconsideration of Judge Duffy's Order; the Motion for Reconsideration was denied on June 16, 2014. (*See* Dkt. No. 84; Dkt. No. 92.) His June 2014 Order stated, *inter alia*,

[T]he Court is not persuaded by Defendants' arguments that the Court's ruling will result in manifest injustice. Defendants contend that "allowing the Court's Order to stand will cripple Defendants' efforts to defend themselves vigorously against product liability claims," will result in "wide ranging negative consequences for other product manufacturers," and "will have a chilling effect on the Company's willingness to specially employ its own resources in a litigation setting, thereby placing the Company at a severe disadvantage when defending its products." Mot. for Reconsideration 11, ECF 84. However, the Court does not agree that such dire consequences will follow from the Court's application of Rule 26(b)(4)(D) to the facts of this case. Rule 26(b)(4)(D) protects from deposition "an expert who has been retained or specially employed by another party in anticipation of litigation." As the Court explained in its Order, "there is no indication in the record that [Mr. Stroble and Mr. Parsons] have any duties or responsibilities other than analyzing . . . tires and field scenes" that are involved with either a claim or an accident. May 5, 2014 Order 8. The Court thus found that Mr. Parsons and Mr. Stroble—who are regular, salaried employees of Defendants whose regular job duties include evaluating all tires that are involved in litigation—have been neither retained nor specially employed by

13

Defendants in anticipation of litigation. If Defendants wish to invoke the protection of Rule 26(b)(4)(D) for non-testifying experts, they could retain an outside expert to evaluate the tires involved in litigation—which is clearly contemplated by the rule—or they could modify their policies and procedures to ensure that in-house experts who are asked to consult in a litigation matter are truly "specially employed" on the matter and not simply performing the same duties they are assigned to do as a matter of course.

 Moreover, the Court finds unpersuasive Defendants' assertion that they will suffer manifest injustice when the depositions go forward because Plaintiff will be "afforded unfair, unwarranted, and unjustified access to the opinions, thoughts, and mental impressions of their adversary in high stakes litigations." Mot. for Reconsideration 12. **Although the Court has held that Mr. Stroble and Mr. Parsons are not protected from deposition under Rule 26(b)(4)(D), nothing in the May 5 Order prevents Defendants from properly asserting the protections of the attorney-client privilege or the work-product doctrine with respect to certain testimony or documents specifically related to this litigation**.

(Dkt. No. 92 at 5-6 (emphasis added).)

 Rule 26(b)(3) provides, in relevant part,

(A) Documents and Tangible Things. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:

  (I) they are otherwise discoverable under Rule 26(b)(1); and

  (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

(B) Protection Against Disclosure. If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories

Fed. R. Civ. P. 26(b)(3).

 To the extent Plaintiff posed questions to Mr. Parsons concerning the early warning document or documents, Mr. Parsons need not answer those questions, as that information is protected. *See In re Allen*, 106 F.3d 582, 608 (4th Cir. 1997) ("We have held that attorney-client privilege does not protect [the selected pages of employment records concerning Donna Willis]. Yet, just as Allen[, the attorney,] prepared the interview notes and summaries in anticipation of litigation, she also chose and arranged these records in anticipation of litigation. This choice and arrangement constitutes opinion

14

work product because Allen's selection and compilation of these particular documents reveals her thought processes and theories regarding this litigation.").

The question is then whether Mr. Parsons' examination of this tire is protected. Defendants assert as follows:

> [C]ontrary to Plaintiff's assertions, this litigation and the eventual examination of the tires and rims are not routine and arise directly from the request of legal counsel in defense of this litigation. As provided herein, the tires and rims were obtained in this litigation, the companion tires and rims are partly owned by Defendants, these tires and rims are the subject of multiple preservation orders, and all tires and rims were the subject of a Tire Inspection Agreement outlining the manner and method of the non-destructive testing.

(Dkt. No. 116 at 3-4.) Furthermore, Mr. Parsons stated as follows in his Affidavit:

> 14. I report directly to Jim Stroble. Mr. Stroble is employed as the Manager of the Product Analysis Department for The Goodyear Tire & Rubber Company.
>
> 15. Mr. Stroble and I examined the Tire at Issue, as well as the companion tires. This examination was completed at the request of legal counsel and in anticipation of and/or preparation for litigation.

(Parsons Aff. ¶¶ 14-15; Dkt. No. 103-4 at 4 of 6.)

> Courts have analyzed the work product privilege in two contexts—fact work product and opinion work product. Both are generally protected and can be discovered only in limited circumstances. Fact work product can be discovered upon a showing of both a substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship. Opinion work product is even more scrupulously protected as it represents the actual thoughts and impressions of the attorney, and the protection can be claimed by the client or the attorney.

*In re Grand Jury Proceedings, Thursday Special Grand Jury Sept. Term, 1991*, 33 F.3d 342, 348 (4th Cir. 1994) (citations omitted).

Regardless of whether Mr. Parsons regularly examines tires during the course of his job duties or not, the inescapable conclusion in this particular case is that Mr. Parsons examined the Tire at Issue as well as the companion tires at the request of counsel. (*See* Dkt. No. 103-4 ¶ 15; *see also* Dkt. No. 129-1 at 9 of 15; *see also* Dkt. No. 129-3.) In fact, in order for Defendants to obtain possession of the Tire at Issue and the companion tires for inspection, counsel for the parties entered into a "Tire Inspection Agreement." (*See* Dkt. No. 103-7.) Mr. Parsons' examination of these particular tires was not

15

performed to prevent a reoccurrence, to improve safety of the Subject Tire, or to respond to regulatory obligations. *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co.,* 967 F.2d 980, 984 (4th Cir. 1992). At the time he examined these tires, Mr. Parsons' employer clearly faced an actual claim that had already resulted in litigation. *See id.* The "Tire Inspection Agreement" was signed by Defendants' counsel on June 28, 2013 and signed by Plaintiff's counsel on July 8, 2013. (*See* Dkt. No. 103-7 at 4 of 4.) Mr. Parsons stated in an Affidavit that the inspection of the Tire at Issue and companion tires began in July of 2013. (*See* Dkt. No. 129-1 at 9 of 15.) The instant lawsuit had already begun, having been filed on February 15, 2013. (*See* Dkt. No. 1.) In light of the foregoing, the undersigned concludes that the subjects at issue in the present motion are in fact protected by the work product doctrine. To the extent the questions posed to Mr. Parsons are protected as fact work product, Plaintiffs have not shown a substantial need or an inability to secure the substantial equivalent of the evidence by alternate means without undue hardship. Plaintiff has hired his own expert witnesses to provide opinions on the cause of the tire failure. Plaintiff seeks, *inter alia*, the measurements Mr. Parsons took of the inner liner of the Tire at Issue, and Mr. Parsons' opinions as to why the Tire at Issue failed. Of course, Plaintiff's own experts have undoubtedly performed those measurements and analyses. Defendants' Motion for Protective Order (Dkt. No. 103) is granted with respect to the early warning document(s) as well as Parsons' examination of the Tire at Issue and companion tires. *See Hickman v. Taylor*, 329 U.S. 495, 516 (1947) (Jackson, J., concurring) ("Discovery was hardly intended to enable a learned profession to perform its functions . . . on wits borrowed from the adversary.").

## Conclusion

It is therefore ORDERED, for the foregoing reasons, that Defendants' Motion for Protective Order (Dkt. No. 105) is GRANTED.

It is further ORDERED that Plaintiff's Motion to Compel (Dkt. No. 100) is GRANTED IN PART and DENIED IN PART. Plaintiff's motion (Dkt. No. 100) is granted as to Exhibit K to Plaintiff's motion as well as to the Subject Tire; Plaintiff's motion is denied in all other respects.

It is also ORDERED that Defendants' Motion for Protective Order (Dkt. No. 103) is GRANTED IN PART and DENIED IN PART. Defendants' motion (Dkt. No. 103) is denied as to the butyl content but granted in all other respects.

It is further ordered that Defendants' Motion for Protective Order (Dkt. No. 107) is GRANTED IN PART and DENIED IN PART. Defendants' motion (Dkt. No. 107) is granted as unopposed as to Questions B; the motion is denied as to Questions A, related to butyl content.

The parties shall comply with the rulings in this Order within ten (10) days of the date of this Order.

AND IT IS SO ORDERED.

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

October 22, 2015
Charleston, South Carolina

17

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | |
|---|---|
| Theodore G. Hartsock, Jr., as Personal Representative of the Estate of Sarah Mills Hartsock, | ) ) ) ) |
| Plaintiff, | ) Civil Action No. 2:13-cv-00419-PMD-MGB ) |
| v. | ) **ORDER** ) |
| Goodyear Dunlop Tires North America LTD, *a foreign corporation*; and The Goodyear Tire & Rubber Company, | ) ) ) ) |
| Defendants. | ) ) |

This matter is before the Court on review of a pretrial discovery order issued by Magistrate Judge Mary Gordon Baker (ECF No. 137). Plaintiff and Defendants have filed objections to various portions of Magistrate Judge Baker's order (ECF Nos. 141 & 142). After carefully considering the parties' objections and the record in this case, the Court finds nothing clearly erroneous or contrary to law in Magistrate Judge Baker's thorough and well-reasoned order. *See* Fed. R. Civ. P. 72(a) (providing that if a party timely objects to a magistrate judge's ruling on a nondispositive matter, the district court must "modify or set aside any part of the order that is clearly erroneous or is contrary to law"); *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985) ("[A] finding is 'clearly erroneous' when . . . the reviewing court . . . is left with the definite and firm conviction that a mistake has been committed.'" (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948))); *King v. Marriott Int'l, Inc.*, No. 9:05-cv-1774-PMD-RSC, 2006 WL 2092592, at *3 (D.S.C. July 26, 2006) ("'[A]n order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure.'" (quoting *Tompkins*

*v. R.J. Reynolds Tobacco Corp.*, 92 F. Supp. 2d 70, 74 (N.D.N.Y. 2000))). The Court adopts the reasoning in Magistrate Judge Baker's order as its own.

Therefore, it is **ORDERED** that Plaintiff's objections and Defendants' objections are all **OVERRULED**.

**AND IT IS SO ORDERED.**

PATRICK MICHAEL DUFFY
United States District Judge

**November 30, 2015**
**Charleston, South Carolina**

# EXHIBIT 2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | | |
|---|---|---|
| Theodore G. Hartsock, Jr., as Personal Representative of the Estate of Sarah Mills Hartsock, | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 2:13-cv-00419-PMD-MGB |
| v. | ) ) | **ORDER** |
| Goodyear Dunlop Tires North America LTD, *a foreign corporation*; and The Goodyear Tire & Rubber Company, | ) ) ) ) | |
| Defendants. | ) ) | |

This matter is before the Court on Defendants' motion for reconsideration of this Court's November 30, 2015 order, in which the Court overruled objections to an order issued by Magistrate Judge Mary Gordon Baker and adopted her order as its own (ECF Nos. 170, 143, & 137, respectively). Defendants ask that this Court alter portions of its order or, in the alternative, certify its order for immediate appeal.

After carefully reviewing Defendants' motion, as well as Plaintiff's response thereto, this Court declines to alter its November 30 order by itself. As to the certification request, the Court has carefully considered the parties' arguments as to what standard governs the parties' dispute over Defendants' trade secret. In this Court's opinion, Magistrate Judge Baker's order, which this Court adopted, involves a controlling question of law as to which there is substantial ground for difference of opinion, and an immediate appeal from the order may materially advance the ultimate termination of the litigation. *See* 28 U.S.C. § 1292(b).

Pursuant to § 1292(b), Defendants shall have ten days from the date of this order to apply to the Fourth Circuit for permission to appeal. All proceedings in this matter are hereby **STAYED** pending Defendants' application and, if granted, during the appeal.

**AND IT IS SO ORDERED.**

PATRICK MICHAEL DUFFY
United States District Judge

**January 19, 2016**
**Charleston, South Carolina**